**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LUISVIC GABRIEL IBARRAS VIZCAINO,<br><br>　　　　　　　　　　　Petitioner,<br><br>v.<br><br>KRISTI NOEM, in her official capacity as Secretary of the Department of Homeland Security, et al.,<br><br>　　　　　　　　　　　Respondents. | Case No.:  3:26-cv-01219-RBM-MMP<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**[Doc. 1]** |

Pending before the Court is Petitioner Luisvic Gabriel Ibarras Vizcaino's ("Petitioner") Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241. (Doc. 1.)  On March 9, 2026, Respondents filed a Response to the Petition ("Response"). (Doc. 4.)  Petitioner filed a Traverse ("Reply") on March 13, 2026.  (Doc. 5.)  For the reasons set forth below, the Petition is **GRANTED**.

**I.　　BACKGROUND**

Petitioner, a native and citizen of Venezuela, was paroled into the United States on December 6, 2024, under 8 U.S.C. § 1182(d)(5).  (Doc. 1 ¶¶ 2, 16; *see* Doc. 5-2, Ex. 2 at 2.) [1]  Petitioner was issued a Notice to Appear ("NTA") that same day.  (Doc. 1 ¶ 17.)

---

[1]  The Court cites the CM/ECF electronic pagination for filings unless otherwise noted.

1

On May 23, 2025, during Petitioner's third court date, the United States Department of Homeland Security ("DHS") "moved to terminate proceedings against Petitioner to place him in expedited removal proceedings." (*Id.* ¶ 18.) Petitioner was then "detained by ICE officers when he exited the courtroom." (*Id.* ¶ 19.) Petitioner alleges that he did not receive notice, information on why he was being re-detained, or an individualized hearing to assess whether his re-detention was warranted due to danger or flight risk. (*Id.* ¶¶ 20–22.) While in detention, Petitioner received a credible fear interview before an asylum officer "to assess whether he presented a credible fear of return to Venezuela." (*Id.* ¶ 23.)

On July 17, 2025, after he received a positive credible fear determination, Petitioner was issued a second NTA. (*Id.* ¶¶ 23–24.) The second NTA charged Petitioner as removable under 8 U.S.C. § 1182 (a)(7)(A)(i)(I) as an "arriving alien" not in possession of valid travel documents. (*Id.* ¶ 24.) On October 6, 2025, Petitioner filed an asylum application, which remains pending. (*Id.* ¶ 25.) Since his arrest on May 23, 2025, Petitioner has been detained at the Otay Mesa Detention Center. (*Id.* ¶¶ 10, 20.)

## II.    LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). The petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* § 2241(c)(3).

## III.    DISCUSSION

Petitioner claims that Respondents revoked his release on humanitarian parole and re-detained him without notice, a pre-deprivation hearing, or an opportunity to be heard in violation of the Fifth Amendment's Due Process Clause, the Administrative Procedure Act

2

3:26-cv-01219-RBM-MMP

("APA"), and the Fourth Amendment. (Doc. 1 ¶¶ 2, 37, 40–65.) Respondents contend that "Petitioner is subject to mandatory detention under § 1225(b), because Petitioner was present in the United States without being admitted or paroled." (Doc. 4 at 2.) In support, Respondents attempt to incorporate by reference arguments regarding the government's authority for mandatory detention under § 1225(b) made in similar cases. (*See id*. at 2–3 & n.2.)[2]  Respondents, however, do not substantively address Petitioner's due process claims.[3]

This Court has granted several habeas petitions filed by similarly situated petitioners who were released from ICE detention on humanitarian parole and later re-detained. In *Perez v. LaRose*, the Court applied the due process inquiry in *Mathews v. Eldridge*, 424 U.S. 319 (1976) and found that "all three factors support a finding that Respondents' revocation of Petitioner's parole [under 8 U.S.C. § 1182(d)(5)(A)] without reasoning or an opportunity to be heard deprived Petitioner of his due process rights." Case No.: 3:25-cv-02620-RBM-JLB, 2025 WL 3171742, at *5 (S.D. Cal. Nov. 13, 2025); *see also Faizyan v. Casey*, Case No.: 3:25-cv-02884-RBM-JLB, 2025 WL 3208844, at *7 (S.D. Cal. Nov. 17, 2025) (reaching the same conclusion as to the revocation of a petitioner's release on his own recognizance). The Court concluded the petitioner's detention was unlawful "because

---

[2] "Generally, courts do not allow incorporation by reference of arguments or 'substantive materials' not contained within the relevant motions' briefs." *Flores v. Bennett*, 635 F. Supp. 3d 1020, 1029 (E.D. Cal. 2022), *aff'd*, No. 22-16762, 2023 WL 4946605 (9th Cir. Aug. 3, 2023) (collecting cases); *see Williams v. Cnty. of Alameda*, 26 F. Supp. 3d 925, 947 (N.D. Cal. 2014) (declining to consider arguments plaintiff "improperly [sought] to incorporate by reference").

[3] Respondents "request[ ] an opportunity to submit [a more formal response] within a reasonable timeframe" (Doc. 3 at 2 n.1), but notably failed to properly request an extension of time. *See also Sosa Inzuna v. Warden of Adelanto Det. Facility*, — F. Supp. 3d —, 2026 WL 233211, at *3 n.2 (C.D. Cal. 2026) (noting "the current volume of habeas petitions . . . being filed can be attributed to Respondents' deliberate choice to continue defying the final judgment entered in *Bautista*").

3:26-cv-01219-RBM-MMP

Respondents detained [the petitioner] by revoking his parole in violation of the Due Process Clause." *Perez*, 2025 WL 3171742, at *5.

The Court reached the same conclusion in *Velazquez-Chinga v. Noem*, finding the revocation of the petitioner's parole without an individualized determination or an opportunity to be heard "was neither consistent with 8 U.S.C. § 1182(d)(5)(A) nor the demands of due process."  Case No.: 3:26-cv-00105-RBM-KSC, 2026 WL 311507, at *3 (S.D. Cal. Feb. 5, 2026) (citing *Araujo*, 2025 WL 3278016, at *2.)  As the Court noted, "[d]ue process for parole terminations requires (1) a decision by an appropriate official on whether the purpose of parole has been served; (2) written notice of the reasons for the termination; and (3) an opportunity to rebut the reasons given for the termination."  *Id*. (quoting *Araujo v. LaRose*, No. 25cv2942-BTM-MMP, 2025 WL 3278016, at *2 (S.D. Cal. Nov. 24, 2025)); *see Noori v. LaRose*, 807 F. Supp. 3d 1146, 1164–66 (S.D. Cal. 2025) (analyzing *Mathews* factors).

Like in *Perez* and *Velasquez-Chinga*, Petitioner was released from his initial detention on humanitarian parole pursuant to 8 U.S.C. § 1182(d)(5)(A).  (*See* Doc. 1 ¶ 2; Doc. 5-2, Ex. 2 at 2.)  Respondents do not dispute that Petitioner was not provided with an individualized determination or an opportunity to be heard before his parole was terminated.  (*See* Doc. 1 ¶ 22; *see generally* Doc. 4.)  Although Petitioner's I-94 form shows an "admit until date" of April 18, 2025, (*see* Doc. 5-2, Ex. 2 at 2), "numerous courts in the Ninth Circuit have found that when a noncitizen is paroled under [8 C.F.R § 212.5], [his] 'liberty interest does not expire along with [his] parole.'"  *Velasquez-Chinga*, 2026 WL 311507, at *3 (quoting *D.L.C. v. Wofford*, No. 1:25-cv-01996-DC-JDP (HC), 2026 WL 145646, at *4 (E.D. Cal. Jan. 20, 2026)); *see Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025) ("That the express terms of the [§ 1182] parole notice allowed for discretionary termination or expiration does not somehow obviate the need for the Government to provide [an] individualized hearing prior to re-detaining the parolee.").

The Court therefore adopts its reasoning in *Perez* and *Velasquez-Chinga* applies it here.  For those same reasons, the revocation of Petitioner's humanitarian parole and his

subsequent re-detention violated the Due Process Clause of the Fifth Amendment and rendered his detention unlawful.

## IV.    CONCLUSION[4]

Based on the foregoing reasons, the Petition (Doc. 1) is **GRANTED**.  Accordingly:

1. Respondents are **ORDERED** to immediately release Petitioner from custody, subject to the conditions of his preexisting parole and Form I-94.

2. Respondents **MAY NOT** re-detain Petitioner without compliance with 8 C.F.R. § 212.5, 8 U.S.C. § 1182(d)(5)(A), and the Due Process Clause.

3. The Court **ORDERS** that, prior to any such re-detention, Petitioner is entitled to notice of the reasons for revocation of his parole and a hearing before an immigration judge to determine whether detention is warranted.  Respondents shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight.

**IT IS SO ORDERED**.

DATE:  March 19, 2026

_____
HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

---

[4]  In light of the disposition herein, the Court declines to address the Petition's remaining grounds for relief.

3:26-cv-01219-RBM-MMP